## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEVEN L. EGINOIRE, )<br>DANIEL H. LOWE, )<br>COR DEVELOPMENT, LLC, and )<br>FIRST NATIONAL BANK OF OLATHE, )<br>)<br>**Plaintiffs,** )<br>) <br>v.  )<br>)<br>MARKET FOODS LIMITED, L.L.C., )<br>RICHARD H. DONCKERS, )<br>H. COLLINS HAYNES, )<br>DAVID W. MONTOYA, AND )<br>CARLOS RODRIQUEZ, )<br>)<br>**Defendants.** )<br>) | CIVIL ACTION<br><br>No. 05-2018-CM |

### MEMORANDUM AND ORDER

Plaintiffs Steven L. Eginoire ("Eginoire"); Daniel H. Lowe ("Lowe"); COR Development, LLC ("COR"); and First National Bank of Olathe ("First National") bring this suit for judgment on a promissory note executed by defendant Market Foods Limited, L.L.C. ("Market Foods") and a guaranty executed by defendants Richard H. Donckers ("Donckers"); H. Collins Haynes ("Haynes"); David W. Montoya ("Montoya"); and Carlos Rodriquez ("Rodriquez"). This matter is before the court on the parties' cross-motions for summary judgment, defendant Haynes' Motion for Summary Judgment (Doc. 100) and Plaintiffs' Motion for Summary Judgment (Doc. 104).[1]

---

[1] This action is stayed as to defendants Market Foods Limited, L.L.C.; Richard H. Donckers; David W. Montoya; and Carlos Rodriquez pending their bankruptcy proceedings. Thus, plaintiffs' motion for summary judgment is only against defendant Haynes. Defendant David W. Montoya's Motion for Summary Judgment (Doc. 102) is also stayed.

**I.     FACTUAL BACKGROUND**[2]

Plaintiff COR developed the Cornerstone of Leawood Shopping Center in Leawood, Kansas. On August 25, 2003, COR and defendant Market Foods entered into a Lease Agreement ("Lease") for space within the shopping center for a grocery store; defendants Donckers, Haynes, Montoya, and Rodriquez were the Lease Guarantors and stockholders of Market Foods.  Under the Lease, COR was to provide Market Foods with a building shell and Market Foods was to furnish the interior.  The Lease also required COR to provide Market Foods with various funds for the store interior, including a $2,000,000 Additional Improvement Allowance loan that was to be advanced in seven installments with the final installment being paid after Market Foods satisfied Section 52 of the Lease.  Pursuant to the Lease, Market Foods was required to execute a Promissory Note for $2,000,000 in exchange for the Additional Improvement Allowance, and the Guarantors were required to guarantee payment of the Promissory Note.

Market Foods executed the Promissory Note on September 10, 2003 and promised to repay $2,000,000 plus interest to COR in monthly installments beginning the first month after COR advanced the initial payment of the principal amount.  That same day, defendants Haynes, Montoya, Donckers, and Rodriguez executed the Note Guaranty personally and unconditionally guaranteeing "the performance of all of [Market Foods'] obligations under that Promissory Note in the amount of $2,000,000 . . . ." Note Guaranty, at 1.

On October 15, 2003, Market Foods requested the first $250,000 installment of the Additional Improvement Allowance.  On November 10, 2003, COR transferred the initial $250,000

---

[2] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

payment to Market Foods. Under the Lease, the next five installments were due the 10th of each month. Lease at § 9. During February and March, Market Foods, through its attorney, sent demand letters to COR for the remaining installments of the Additional Improvement Allowance. On May 4 or 5, 2004, plaintiff Lowe transferred $100,000 out of his personal account to Market Foods. On July 13, 2004, Market Foods sent COR a notice of default for failing to fund the loan for the Additional Improvement Allowance and invoking the 30 day Notice to Cure Default pursuant to the Lease. On July 26, 2004, COR assigned the Promissory Note to plaintiffs Lowe and Eginoire. On August 31, 2004, Market Foods' attorney sent another demand letter stating that if the Additional Improvement Allowance was not received within forty-eight hours, Market Foods would declare COR in breach of the Lease and begin to mitigate its damages. On September 1, 2004, Lowe and Eginoire assigned the Promissory Note to plaintiff First National as collateral for a $2,000,000 loan.

Up to this point, COR had not paid the Additional Improvement Allowance installments in accordance with the Promissory Note, and Market Foods had not been making the required monthly payments. On September 2, 2004, Market Foods and COR, through its development service company, entered into an agreement (the "Release") whereby the parties resolved their respective defaults. Release, at 1. In the Release, COR agreed to advance the $1,650,000 remaining for the Additional Improvement Allowance and pay interest for its failure to provide the funds earlier. *Id.* at 2. Market Foods acknowledged receipt of the entire $2,000,000 Additional Improvement Allowance in the form of the November 10, 2003 $250,000 payment, May 5, 2004 $100,000 payment, and September 2, 2004 $1,650,000 payment; released COR for any claims arising from COR's failure to make the Additional Improvement Allowance payments as required by the Lease; and declared that:

> [Market Foods] hereby covenants and agrees that (i) as of [September 2, 2004, COR] is not in default of any term or provision of the Lease, and no condition exists that would or might, with the giving of notice and the

> lapse of any applicable cure period in the Lease, constitute a default under the Lease, and the Lease is in full force and effect, and (ii) [COR] has satisfied, or [Market Foods] has waived (or, if not previously waived, [Market Foods] here by waives), all conditions and contingencies to be satisfied or waived on or before [September 2, 2004] . . . .

Id at 2.

Market Foods made two payments, totaling $37,905.34, toward the $2,000,000 and then defaulted on the Promissory Note. Defendants Donckers, Montoya, and Rodriquez have all subsequently filed for bankruptcy. The current amount due and owing under the Note Guaranty is in dispute.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Plaintiffs argue that they are entitled to damages under the Promissory Note because: (1) the Promissory Note was validly executed by Market Foods; (2) defendant executed an unconditional guaranty of Market Foods' obligations under the Promissory Note to repay the $2,000,000; (3) Market Foods defaulted on the Promissory Note; and (4) money is due and owed under the Promissory Note. Defendant Haynes does not dispute these facts, which make him liable under the Note Guaranty, *Glencore Grain Ltd. v. Seaboard Corp.*, 241 F. Supp. 2d 1324, 1335 (D. Kan. 2003), but, instead, advances three affirmative defense as to why he is entitled to a discharge of his

-4-

guarantor obligations: (1) COR breached its obligations under the Lease; (2) there was a novation of the Note Guaranty; and (3) defendant's obligations under the Note Guaranty were materially changed by the Release between Market Foods and COR. Defendant is liable for his obligation under the Note Guaranty unless he can prevail on his affirmative defenses.

The Note Guaranty provides that it shall be governed by and construed in accordance with the laws of the State of Kansas. Under Kansas law, "a guaranty is a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and, in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking." *Trego WaKeeney State Bank v. Maier*, 519 P.2d 743, 747 (Kan. 1974). The original contract of the principal is not the guarantor's contract; the guarantor's contract is separate. *Id.*

A guaranty "is construed according to the intention of the parties as determined by a reasonable interpretation of the language used in light of the circumstances." *Gen. Elec. Capital Corp. v. Dodson Aviation*, 286 F. Supp. 2d 1307, 1314 (D. Kan. 2003) (citing *Overland Park Sav. & Loan Ass'n v. Miller*, 763 P.2d 1092 (Kan. 1988). A guarantor is a favorite of the law; "[g]uaranty contracts are strictly construed in favor of the guarantor." *Autumn Manor, Inc. v. Jones*, No. 03-4083-SAC, 2003 WL 22208656, at *3 (D. Kan. Aug. 19, 2003). Although a guaranty contract may be construed together with the principal obligation and related documents, *Ryco Packaging Corp. of Kan. v. Chapelle Int'l. Ltd.*, 926 P.2d 669, 674-74 (Kan. Ct. App. 1996), the guarantor's liability is based on a strict construction of the terms of the guaranty and cannot extend beyond the precise terms of the obligation. *Iola State Bank v. Biggs*, 662 P.2d 563, 570 (Kan. 1983); *Autumn Manor*, 2003 WL 22208656, at *3. A guarantor may be relieved of his obligation if the debt is extinguished, if there is a valid release or discharge, if the claim against the guarantor is barred by

the statute of limitations, or if there is a change in the original contract. *Iola State Bank*, 662 P.2d at 570.

### A.     COR's Alleged Breach

Defendant contends that COR's breach of the Lease absolves him of liability on the Note Guaranty. Defendant argues that plaintiffs were in breach of the contract on September 2, 2004, when they tendered the final payment of the Additional Improvement Allowance because they had not delivered the building structure in a timely manner as required by the "time is of the essence" provision of the lease. This breach, and any other pre-September 2004 breach by COR, was resolved and released by Market Foods in the Release. In the Release, Market Foods declared that COR was not in default of any term of the Lease, that no condition existed that would constitute a default under the Lease, and that COR had satisfied all conditions and contingencies required as of September 2, 2004. The parties further declared that the Lease was in full force and effect. Therefore, the court finds that the alleged breach does not release defendant from his obligations under the Note Guaranty.

### B.     Novation

Defendant argues that the Release is a substitution for the Note Guaranty and thus constitutes a novation. Novation is "a substitution of a new contract or obligation for an old one which is thereby extinguished." *Elliot v. Whitney*, 524 P.2d 699, 703 (Kan. 1974). Under Kansas law, a novation requires (1) a previous valid contract; (2) a new valid contract agreed to by the parties; and (3) an intent to extinguish the old contract and substitute the new one. *Id.* The party asserting novation has the burden to establish the essential requirements. *Glencore Grain Ltd.*, 241 F. Supp. 2d at 1335 (citing *Davenport v. Dickson*, 507 P.2d 301, 306 (Kan. 1973). The intent to extinguish the old obligation must be clear and definite. *Id.*

Defendant contends that the Release is a substitution of the original contract because it distributed the Additional Improvement Allowance in a different order than the original agreement. While the Release may have altered some of the obligations under the Lease, it did not replace the Lease or the Note Guaranty. There is no evidence that the parties intended to extinguish defendant's liability under the Note Guaranty. Therefore, the court finds that the Release was not a novation of the original agreement and does not release defendant from his guarantor obligations.

### C. Material Change in Defendant's Obligations Under the Note Guaranty

Defendant argues that the Release changed the terms of the Note Guaranty and that the changes made by the Release prohibit enforcement of the Note Guaranty. Plaintiffs contend that the Release did not change the Lease, but if it did, the changes were not material and thus do not affect defendant's liability under the Note Guaranty.

A guarantor's liability cannot be extended by implication; he is only liable for the precise terms of his contract. *Kutilek v. Union Bank of Wichita*, 516 P.2d 979, 983 (Kan. 1973). Any change in the obligation made without the guarantor's assent discharges a gratuitous grantor, but only a material change in the obligation discharges a compensated guarantor. *Id.* "A change is material when the nature of the contract is changed." *Autumn Manor*, 2003 WL 22208656, at *3. When determining whether a change is material, the court asks "whether '[t]he effect of the change is to place the [guarantor] in a different position than he occupied before the change was made.'" *Id.* (citing Stearns, The Law of Suretyship (Elder ed. 1951) § 6.3, at 109). A change is material if a careful and prudent person would regard the change as substantially increasing the risk of loss. *Id.*

Defendant first argues that he is a gratuitous grantor, and thus, any change, material or not, of the guarantor obligation releases him from the Note Guaranty. Defendant relies on cases from other jurisdictions that discuss compensated sureties and gratuitous sureties, but he overlooks Kansas law,

-7-

which holds that "one who, to facilitate the raising of money by a corporation of which he is a stockholder, guarantees the payment of the loan, is not entitled to that extreme liberality of treatment which is accorded a volunteer surety." *First Nat'l Bank v. Livermore*, 133 P. 734, 736 (Kan. 1913). Additionally, a gratuitous act is one "not involving a return benefit, compensation, or consideration." Webster's New Collegiate Dictionary (1977). Here, defendant executed the guaranty "in consideration of the benefits inuring to [him] under the Lease . . . ." Note Guaranty, at 1. As a stockholder, defendant was "seeking a benefit [] in promoting an enterprise in which [he was] largely interested." *First Nat'l Bank*, 133 P. at 736. Therefore, the court finds that defendant is a compensated guarantor. To be released from the Note Guaranty, he must show that the obligation was materially changed without his consent.

The court next considers whether defendant's guarantor obligations were materially changed. Defendant argues that the Release materially changed the terms of the Lease and the risk of the Guarantors because it (1) provided new interest rate terms; (2) created new obligations and benefits by adopting new terms of and timetable for payment; (3) eliminated Market Foods' claims for COR's breach of the Lease arising from COR's failure to construct the building exterior, failure to fund the Construction Allowance, and failure to provide the Additional Improvement Allowance; (4) advanced the Additional Improvement Allocation before the exterior existed; and (5) dispersed the funds in three installments instead of six.

First, the court considers defendant's argument that he is not liable because the Release altered the interest rate terms and timetable for payment. The court finds that defendant's argument is without merit. The Promissory Note specifically addresses this issue and provides that the interest rate terms and the payment timetable may be modified at the sole option of COR:

-8-

> From time to time, without affecting the obligation of Borrower, its successors or assigns, to pay the outstanding principal balance of this Note and observe the covenants of Borrower contained herein, without affecting the guaranty of any person, corporation, partnership, or other entity of payment of the outstanding principal balance of this Note, and without giving notice to or obtaining the consent of Borrower, Lender may, at its sole option, extend the time for payment of the outstanding principal balance or any part thereof, release anyone liable on any of the outstanding principal balance, accept renewal of the Note, modify the terms and time of payment of the outstanding principal balance, join in any extension or subordination agreement, release any security given herefor (whether in whole or in part), take or release other or additional security, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable hereunder.

Promissory Note, at 3. Thus, any changes to the interest rate terms or payment schedule made by the Release were contemplated in the original obligation and do not materially alter defendant's obligation. *See e.g., First Nat'l Bank of Anthony v. Dunning*, 855 P.2d 493, 496 (Kan. Ct. App. 1993) (finding the interest rate change was not a material modification because it had been anticipated in the contract).

Next, the court considers Market Foods' release of the breach of contract claims against COR; the timing of the Additional Improvement Allocation; and the distribution of the funds in three installments rather than six. The court finds that these changes were not material. Market Foods' release of the breach of contract claims did not alter defendant's liability under the Note Guaranty. The Note Guaranty is a separate contract from the Lease and does not give defendant any rights under the Lease. And defendant is not a party to the Lease agreement. Defendant never had a cause of action against COR for the alleged breaches of the Lease; the claims belonged to Market Foods. Moreover, the Lease provided Market Foods with specific remedies for COR's breaches, none of which included a discharge of the Note Guaranty. *See* Lease at ¶ 99.1. A discharge of the guarantee would go against the terms of the agreements. *See e.g., Peoples Nat'l Bank v. Purina Mills, Inc.*,

931 F. Supp. 1525, 1533 (D. Kan. 1996) (applying a similar Missouri law and holding that a breach of a guarantee was not a material change because the guarantee contained specific remedies for breach). Market Foods' release of its breach of contract claims against COR did not give up any rights belonging to defendant and did not place the defendant in a different position than he occupied before the change was made.

The timing and distribution of the Additional Improvement Allocation were not material changes either. At Market Foods' request, the initial Additional Improvement Allocation was distributed on November 10, 2003, which, under the Lease, made the next five payments of $291,666.66 due on the 10th of each of the following months. By April 10, 2004, Market Foods would have received all but the final $291,666.66 payment of the $2,000,000. The final payment was due when Market Foods satisfied Section 52 of the Lease. The Release allowed distribution of the final payment earlier than under the Lease, but in return, it cured Market Foods' breach of the Lease, which was a benefit to the guarantors. This alteration in the Lease was not material to defendant's obligation under the Note Guaranty because it did not substantially increase defendant's risk. The Note Guaranty contemplated obligations in the amount of $2,000,000. After the alleged changes, defendant was still obligated for only $2,000,000. Defendant has not shown that the changes materially altered the underlying obligation and his evidence does not present a genuine issue of material fact regarding the enforceability of the guaranty. *See e.g., Glencore Grain Ltd.,* 241 F. Supp. 2d at 1333.

For the above-stated reasons, defendant's motion for summary judgment is denied, and plaintiffs' motion is granted as to liability against defendant Haynes. Because the amount and calculation of plaintiffs' damages is in dispute, plaintiffs' motion is denied with respect to damages against defendant Haynes. Evidence of damages may be presented at trial.

### D. Other Issues

The court has considered several other issues the parties mentioned in passing and finds them unpersuasive. The court also finds that these issues do not have a material effect on the outcome of this case. First, the parties mention the issue of the assignments to Eginoire and Lowe and First National. The assignments, however, were contemplated in the Note Guaranty and do not constitute a material change. Second, throughout its briefing, defendant argues that the changes were made unilaterally and without notice to guarantors. The court finds this unpersuasive. Generally, a guarantor is entitled to notice of a change in his obligation, *Kutilek*, 516 P.2d at 983, however, defendant Haynes waived his right to notice in the Note Guaranty. Third, defendant argues that the September 2, 2004 payment of $1,650,000 was given solely and exclusively to obtain a release and settlement of COR's outstanding liability, not as an installment of Additional Improvement Allowance. The court finds this argument unpersuasive as well. The Release specifically states that the September 2, 2004 payment "represents the remaining balance of the Additional Improvement Allowance payable under the Lease." Release, at 1. And plaintiffs' broad interpretation of "unconditionally guarantees" is rejected; the term relates only to whether plaintiffs must first pursue the principal before seeking payment from the guarantor. *Joe Heaston Tractor & Implement Co. v. Secs. Acceptance Corp.*, 243 F.2d 196, 200 (10th Cir. 1957) (explaining that an unconditional guarantee is one in which the guarantor is immediately liable without notice upon the principal's default).

## IV. CONCLUSION

The court has considered all of the arguments presented by the parties, although they are not all discussed here. Some of the arguments are irrelevant to the claims at issue in this case. Others have been rendered moot by the court's decision here. After considering all of the evidence of

record and the positions of the parties, the court denies defendant's motion for summary judgment and grants in part plaintiffs' motion for summary judgment.  Plaintiffs' Motion for Summary Judgment is granted in part as to liability and denied in part as to damages against defendant Haynes.

**IT IS THEREFORE ORDERED** that defendant Haynes' Motion for Summary Judgment (Doc. 100) is denied.

**IT IS FURTHER ORDERED** that defendant Montoya's Motion for Summary Judgment (Doc. 102) is stayed pending the resolution of the bankruptcy proceeding.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 104) is granted in part and denied in part as to defendant Haynes and remains stayed pending the resolution of the bankruptcy proceedings.

Dated this <u>19th</u> day of September 2006, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
